IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JACKIE L. LAWRENCE,               )
                                  )
            Plaintiff,            )
                                  )
v.                                )   Case No. CIV-11-090-KEW
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social            )
Security Administration,          )
                                  )
            Defendant.            )

## OPINION AND ORDER

Plaintiff Jackie L. Lawrence (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 25, 1956 and was 52 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant worked in the past as a highway patrol dispatcher. Claimant alleges an inability to work beginning

September 8, 2006 due to limitations resulting from chronic low back pain, secondary to degenerative disc disease of the lumbar spine, chronic neck pain, secondary to degenerative disc disease of the cervical spine, right-side facial numbness, secondary to undetermined neurologic disorder with a history of stroke, recurring severe headaches, sleep disturbance, secondary to pain, chronic fatigue, secondary to pain, sleep disturbance, and undetermined neurologic disorder with history of stroke, impaired focus and concentration, secondary to pain, fatigue, and undetermined neurologic disorder with history of stroke, and depression.

## Procedural History

On November 3, 200, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On March 26, 2009, an administrative hearing was held before ALJ Glenn A. Neel in McAlester, Oklahoma. On September 29, 2009, the ALJ issued an unfavorable decision. On January 14, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a narrowed range of sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to afford Claimant's treating physician's opinion the appropriate weight; and (2) failing to properly assess Claimant's RFC.

**Opinions of Claimant's Treating Physician**

Claimant first contends the ALJ failed to weigh the opinion of Dr. Calvin Kubo, her treating physician. In her decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spine, hypertension, and status post remote cerebral vascular accident. (Tr. 16). He also determined Claimant had acquired work skills from her past relevant work, including dealing with the public, operating office equipment, maintaining records, and answering the telephone. (Tr. 23). The ALJ concluded Claimant could perform a narrowed range of sedentary work with an RFC that permits her to lift and/or carry 10 pounds occasionally and 5 pounds frequently,

stand and/or walk for 2 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday. He also found Claimant could climb, balance, stoop, kneel, crouch, and crawl only occasionally. Claimant also requires a sit/stand option at will, must avoid hazards such as moving machinery, working at heights, and driving a vehicle as a part of her work due to side effects from medication. (Tr. 17). After consultation with a vocational expert, the ALJ determined Claimant could perform semi-skilled jobs of telephone answering operator and credit card clerk. Claimant was found to also be able to perform the unskilled jobs of order clerk and semi-conductor assembler. (Tr. 24).

On April 13, 2007, Dr. Kubo completed a Multiple Sclerosis Impairment Questionnaire on Claimant. He stated he most recently treated Claimant on November 6, 2006 and had done so every 1-2 months until Claimant relocated. He diagnosed Claimant with "numbness of the face, neurologic disorder, probable M.S." Claimant's prognosis was "gaurded" (sic). Dr. Kubo found Claimant to suffer fatigue and numbness, tingling of the face. (Tr. 739). He also stated Claimant suffered "persistent, severe recurrent headaches." (Tr. 740). The pain from the headaches was suffered "almost daily." Dr. Kubo stated under precipitating factors leading to the pain that Claimant suffered from brain lesions from M.S. (Tr. 741). Claimant's pain was not relieved with medication.

6

Dr. Kubo did not believe Claimant was a malingerer. He found Claimant had sensory function problems but not motor function. Claimant was subject to exacerbation and remission. Emotional problems contributed to the severity of Claimant's condition and her functional limitations. Dr. Kubo estimated Claimant "frequently" experienced pain, fatigue, or other symptoms severe enough to interfere with attention and concentration. Claimant could tolerate low work stress based upon Dr. Kubo's observations. (Tr. 742). Dr. Kubo listed multiple medications prescribed to Claimant. (Tr. 743).

With regard to functional limitations, Dr. Kubo found Claimant could sit for 4 hours in an 8 hour workday, stand/walk for 0-1 hours in an 8 hour workday, must get up and move around every 2 hours for a period of 10-15 minutes before sitting again. Dr. Kubo stated Claimant should not stand or walk continuously in a work setting. (Tr. 743-44).

Dr. Kubo found Claimant could lift/carry 0-10 pounds frequently, 10-20 pounds occasionally, and never over 20 pounds. He estimated Claimant would experience "good days" and "bad days" and would likely be absent from work about 2-3 times per month. He found Claimant would experience psychological limitations, needed to avoid wetness, noise, fumes, temperature extremes, humidity, gases, heights, and stooping. Claimant was not to push, pull,

kneel, or bend. (Tr. 744-45).

The ALJ gave "no weight" to Dr. Kubo's opinion stated in the Questionnaire. (Tr. 22). The ALJ specifically made this finding because (1) he is a family doctor and not a specialist; (2) while Dr. Kubo found "probable M.S.", subsequent testing revealed Claimant does not suffer from the condition which she acknowledges in her testimony; (3) Dr. Kubo had not seen Claimant since November of 2006 when he completed the Questionnaire in April of 2007 and had seen her every month or two before that date.

In evaluating the opinions of a treating physician such as Dr. Kubo, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The

8

factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

This Court is not persuaded that the fact Dr. Kubo is a family physician rather than a specialist disqualifies him from rendering an opinion upon Claimant's medical conditions or physical

9

limitations. Moreover, Dr. Kubo's frequency of treatment was sufficient for him to ascertain and treat Claimant's conditions prior to Claimant relocating.

However, the basis that Dr. Kubo was incorrect in his diagnosis of multiple sclerosis does give the Court pause in assessing the weight given to his opinion. Closer examination of the opinion reveals that Dr. Kubo was reaching his opinions based upon the physical problems Claimant was experiencing and not necessarily upon a diagnosis of multiple sclerosis and the historical or classic problems associated with the condition. For example, he appears to attribute his limitations largely upon the fatigue, numbness, and recurrent headaches Claimant was suffering. As Claimant indicates, Dr. Kubo's diagnosis was only "probable M.S." based upon the information available to him during the treating relationship - fatigue, brain lesions, numbness. On remand, the ALJ shall reassess the weight given to Dr. Kubo's opinion based upon his clinical findings and not upon the conditional diagnosis of M.S. If the ALJ deems it advisable to ascertain the basis of his conclusions, he shall re-contact Dr. Kubo and obtain further diagnostic and functional information from him. See, Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004)(if the ALJ determines the treating physician failed to

provide sufficient support for his conclusions on limitations, he should recontact the physician for clarification of his opinion before rejecting it.)

### RFC Determination

Since the ALJ must reconsider his evaluation of Dr. Kubo's opinion, he must also re-evaluate his RFC determination after his rejection of Dr. Kubo's findings on remand.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 30th day of July, 2012.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

11